**FILED**

**April 15, 2019**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 9:17 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | |
|---|---|
| **ALICE HUNT,** | )   **Docket No. 2017-05-0720** |
|       **Employee,** | ) |
| **v.** | )   **State File No. 50419-2017** |
| | ) |
| **KROGER,** | )   **Judge Robert Durham** |
|       **Employer.** | ) |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court conducted an expedited hearing on April 3, 2019, to determine whether Ms. Hunt is likely to prove that her need for medical care to her left foot arises primarily out of her fall at work on May 10, 2017. The Court holds Ms. Hunt is not likely to do so and denies her request for medical benefits.

### History of Claim

This is the second expedited hearing in Ms. Hunt's claim. In the first, the Court found that Ms. Hunt suffered from hypertension, congestive heart failure, and uncontrolled diabetes for several years with the diabetes resulting in severe peripheral neuropathy in both feet. The Court further found that on May 10, 2017, while gathering shopping carts in the Kroger parking lot, Ms. Hunt became unconscious for unknown reasons and collapsed to the ground. The Court based this finding on Ms. Hunt's testimony and the emergency room records that related her admission that day to treat uncontrolled hypertension, illustrated by her blood pressure spiking at 240/120.

At the first hearing, Ms. Hunt alleged that her hypertension and the physical stress of moving the carts on a warm day caused her syncopal episode. She further alleged the fall from the syncopal episode caused injuries to her left foot that months later resulted in an ulceration and almost required amputation. The Court held that Ms. Hunt failed to introduce any medical testimony linking the syncopal episode to her employment or her

1

left-foot condition to the syncopal episode. As a result, the Court denied her request for benefits on May 3, 2018.

Several months later, Ms. Hunt began treatment with orthopedist Richard Alvarez. On her initial visit, Dr. Alvarez noted that Ms. Hunt told him she twisted her left ankle on December 7, 2016,[1] and May 10, 2017, while working at Kroger. On exam, Dr. Alvarez observed stocking anesthesia and diffuse swelling in her left foot. He also found significant clawing deformity in her left toes as well as an old fracture of her middle toe.

Dr. Alvarez concluded that the accident in "January" triggered a diabetic neuropathic phenomenon in her left foot known as Charcot joint. He recommended she wear a boot to immobilize the foot and prevent further damage. When Ms. Hunt returned, Dr. Alvarez ordered x-rays that revealed severe degenerative changes in her left mid-foot and hypertrophic changes at the base of her toes. At this point, he recommended Ms. Hunt be fitted for a permanent brace to stabilize her foot.

Seeking payment for the brace, Ms. Hunt retained counsel and filed this request for expedited hearing. In preparation, Kroger took Ms. Hunt's deposition. Ms. Hunt stated that she did not become light-headed or unconscious before she fell on May 10. Instead, she was attempting to manipulate the shopping carts when her left ankle turned or "rolled" outward, causing her to fall to the pavement. She stated that she then struck her head on the pavement and apparently lost consciousness for some time. She admitted that when she went to the emergency room, she did not say anything about her left foot, but she attributed it to concern about her blood pressure.

The parties also deposed Dr. Alvarez regarding causation. Although confused by the dates, he initially gave his opinion that the incidents in December 2016 and May 2017 "created" the Charcot problem due to Ms. Hunt's statement that she had experienced swelling since May. In fact, he believed the May incident might have caused the third toe fracture.[2] He explained that Charcot fractures only manifest themselves in a small percentage of long-term diabetics who are usually overweight. He further explained that the condition can cause joints to "fall apart" from even minor injuries. Further, the condition might not even manifest itself until months after the initial injury. He then reiterated that, even given her diabetic background, he believed Ms. Hunt's May 10 fall contributed more than 50% to the injury he was treating.

On cross-examination, Dr. Alvarez admitted that his opinion would be affected if Ms. Hunt gave him an inaccurate history. He further admitted that he did not have any

---

[1] Ms. Hunt asserted she broke her right fourth toe when she ran over it with a shopping cart.

[2] There is no evidence that Ms. Hunt fractured her toe in the December or May incidents or that Ms. Hunt complained of pain involving that toe.

medical records documenting her previous medical care and that he relied solely on her statements in determining her history. He did not know that she actually treated for a right-toe injury in December 2016 as opposed to an injury to her left ankle. He was also unaware that the medical records for the May 2017 fall stated it was due to a syncopal episode and there was no record of any left-foot complaints during the emergency room visit or Ms. Hunt's hospital stay to treat her uncontrolled hypertension. Finally, Dr. Alvarez did not realize that Ms. Hunt denied any trauma to her left foot when she treated for an ulceration requiring surgery in January 2018.

When confronted with this information, Dr. Alvarez testified that if the history Ms. Hunt gave him were correct and she suffered trauma to her left foot in May 2017, he still believed that incident contributed more than fifty percent to her Charcot fracture. However, if the information presented by Kroger's counsel were accurate, he agreed that it would change his opinion in Kroger's favor.

Ms. Hunt also testified at the hearing. Regarding the May 2017 fall, she testified that, as she manipulated the carts, she distinctly remembered pain from one the carts striking her left ankle, causing her to fall and hit her head on the pavement. She explicitly denied being light-headed or passing out before she fell, inferring that the hospital must have confused her May incident with one in April when she went to the emergency room complaining of being light-headed at work.

Kroger then introduced Ms. Hunt's emergency room and hospital records from May 10 and May 12, 2017, and January 2018. The emergency room report noted that Ms. Hunt had a syncopal episode at Kroger and that she reported "feeling light-headed while pushing shopping carts and then waking up on the ground." Kroger also made an exhibit of a note from May 12 stemming from a follow-up appointment for her right toe. The note does not mention a left-foot injury. The January 2018 records document that Ms. Hunt denied any trauma to her left foot. Finally, Kroger admitted Ms. Hunt's affidavit from her first request for expedited hearing stated that on May 10, she was made to gather shopping carts "in the heat of the day" when she "collapsed." Although she claimed an eye injury, she did not mention a left-foot injury.

### Findings of Fact and Conclusions of Law

Ms. Hunt need not prove every element of her claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, she must present sufficient evidence that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

3

The primary issue is causation. Kroger does not dispute that Ms. Hunt suffers from a serious medical condition in her left foot requiring immediate treatment. However, it contends that Ms. Hunt did not show she is likely to prove this condition is causally related to the May 10, 2017 work incident.

To do that, she must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

Here, the only medical opinion as to causation is from Dr. Alvarez. He made it clear that whether he believed the May 10 incident contributed more than fifty percent to her Charcot fracture hinged on Ms. Hunt's credibility regarding the episode. Thus, the Court's holding must also rest on whether Ms. Hunt is credible. The Court cannot find she is on this issue for the reasons below.

The evidence establishes that, from May 10, 2017, through her first expedited hearing, Ms. Hunt maintained that she became light-headed and dizzy while pushing shopping carts and this syncopal episode caused her to fall to the ground. The medical records, her affidavit, and her testimony from the initial expedited hearing (as documented in the Court's order) reflect this. Ms. Hunt did not claim any work-related problems with her left foot until several months later when she developed an ulceration that required significant medical care. Then, during her deposition, Ms. Hunt adamantly denied a syncopal episode before falling, but instead claimed that she twisted or "rolled" her ankle, which caused her to fall and strike her head on the pavement. At this expedited hearing, Ms. Hunt revised her account again and testified that a shopping cart wheel hit her left ankle, causing her to fall. She also reiterated her denial that she experienced any dizziness or light-headedness before she fell.

Given the evidence before it, the Court cannot find Ms. Hunt credible as to when and where she might have injured her left foot. Since Dr. Alvarez's opinion required a credible history, the Court holds Ms. Hunt did not establish she is likely to prevail on the causation issue at trial.

**IT IS, THEREFORE, ORDERED** that:

1. Ms. Hunt's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing/Status Conference on June 14, 2018, at 2:00 p. m. Central Time. The parties must call 615-253-0010 or toll-free at 866-689-9049 to participate in the hearing. Failure to call in may result in a determination of the issues without the party's participation.

**ENTERED APRIL 15, 2019.**

**ROBERT V. DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Medical records and Ms. Hunt's deposition transcript
2. Dr. Alvarez's medical records
3. Dr. Alvarez's November 27, 2018 record
4. Employer's collective exhibit of medical records
5. Dr. Alvarez's deposition
6. Medical records from Southern Tennessee Regional Health System
7. Medical records from Highland Rim Foot and Ankle Clinic
8. January 19, 2018 discharge report
9. January 12, 2018 hospital report
10. January 13, 2018 hospital report
11. Medical excuse note dated April 21, 2017
12. Ms. Hunt's affidavit dated December 12, 2017

Technical Record:
1. Request for Expedited Hearing
2. Order Setting Expedited Hearing
3. Expedited Hearing Denying Benefits dated May 3, 2018
4. Kroger's Pre-Hearing Brief
5. Kroger's Supplemental Response
6. Ms. Hunt's Pre-Hearing Brief
7. Kroger's Notice of Intent to Use Medical Records

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on April 15, 2019.

| Name | Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| H. Thomas Parsons | X | X | | 101 W. Main Street Manchester, TN 37355 931-728-1318 |
| Doug Dooley | | | X | doug.dooley@leitnerfirm.com |

PENNY SHRUM, COURT CLERK
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice
Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties
**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____ , having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                                RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries        $ _____ per month      Telephone     $ _____ per month

Electricity      $ _____ per month      School Supplies $ _____ per month

Water            $ _____ per month      Clothing      $ _____ per month

Gas              $ _____ per month      Child Care    $ _____ per month

Transportation   $ _____ per month      Child Support $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile           $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                $ _____    (FMV) _____

Other                $ _____    Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                        RDA 11082